UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RALPH RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-447 |
| | § | |
| OLIVER BELL, *et al*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND RECOMMENDATION
# TO DISMISS ACTION

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that this action be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), and further, that this action be counted as a "strike" for purposes of 28 U.S.C. § 1915(g).

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is currently confined at the McConnell Unit in Beeville, Texas. He filed this civil rights action on November 7, 2014, alleging that Defendants had denied him possession of certain photographs on the grounds that they were "sexually explicit" and thus subject to rejection via Board Policy (BP) 03.91. (D.E. 1). He named the following individuals as Defendants: (1) Oliver Bell, Chairman of the Texas Board of Criminal Justice (TBCJ); (2) John and Jane Does on the TBCJ; (3) Warden Putnam, McConnell Unit warden; (4) Kisha Collins, McConnell Unit Mailroom Supervisor; (5) John and Jane Does on the Mail Systems Coordinators Panel (MSCP); (6) Jennifer Smith, member of the Directives Review Committee (DRC) in Huntsville, Texas; and (7) John and Jane Does on the DRC. *Id.* at 3.

On November 24, 2014, a *Spears*[1] hearing was conducted. The following allegations were made in Plaintiff's original complaint (D.E. 1), or at the hearing:

Plaintiff is in the TDCJ-CID serving a life sentence for capital murder. He has been at the McConnell Unit since 1998. He has a prison job as a "rec porter," assisting in recreation activities and cleaning the courts. He does not have access to a computer.

Plaintiff receives publications and catalogues that advertise for purchase photographs of women in bikinis, lingerie, or otherwise scantily clad. The catalogues themselves, which contain thumbnail pictures, are permitted by the prison. Over the years, Plaintiff has ordered various photographs from these publications. However, during the last year, he has had at least fourteen (14) photographs denied by Kisha Collins, the Mailroom Supervisor, individuals on the Mailroom staff, or the Unit's Mail System Coordinators Panel (MSCP), which is defined by BP 03.91 as "the body designated to assist in the maintenance and coordination of the Uniform Mail System. The MSCP serves to bring uniformity to the decisions of the various [TDCJ] units by providing technical assistance and rule interpretation; serves as the centralized authority for the review of publications for initial unit acceptance or denial; provides training for mailroom staff; conducts in-depth monitoring of all unit mailrooms; and submits periodic reports pertaining to the offender mail system."[2]

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

[2] A copy of BP 03.91 is available at the TDCJ's website at:https://www.tdcj.state.tx.us/documents/policy/BP0391.pdf.

Pursuant to BP 03.91, all publications are subject to inspection by the MSCP and by Unit staff.  The MSCP has the authority to accept or reject a publication for content, subject to review by the Director's Review Committee (DRC), which is a body of appointed TDCJ administrators with the authority to hear all appeals related to rejected correspondence and publications.  Plaintiff argues that, although he is permitted to challenge the MSCP's rejection of a photograph as sexually explicit, the process is fundamentally flawed because he is not allowed to see the rejected photograph, but is only given a description of it.  He argues also that the definition of "sexually explicit" is overly broad and vague, and fails to set forth a clear standard, such that each photograph is subject to the personal standard of the mailroom employee that happens to be reviewing it.  He claims that the MSCP upholds the mailroom employee's decision, and on appeal, the DRC upholds the MSCP's decision.  Plaintiff must then make arrangements to have the photograph mailed home or destroyed.

Plaintiff claims that Oliver Bell and the TBCJ instituted an overly broad, unconstitutional policy regarding what constitutes prohibited sexually explicit material. He claims that Kisha Collins, as the Mailroom Supervisor, has instructed her employees to interpret BP 03.91 in such a manner as to reject any photographs if pubic hair is visible, and that Warden Putnam denies his grievances without investigation.  He alleges that Jennifer Smith and other members of the DRC deny him his due process rights by failing to let him review challenged photographs.  Plaintiff is seeking injunctive relief only requiring Defendants to establish a fair policy that plainly defines what types of

photographs are allowed and that is not subject to the personal interpretations of employees reviewing prisoner mail.

## III. LEGAL STANDARD.

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.*

## IV. DISCUSSION.

Plaintiff alleges that his constitutional rights were violated when Defendants confiscated certain photographs or images that he had ordered and then denied his receipt on the grounds that the images were proscribed by BP 03.91 as being sexually explicit. He argues that the confiscation of the photographs violated his First Amendment rights, and that his inability to effectively challenge the MSCP's and DRC's decisions regarding the photographs violates his due process rights.

## A. First Amendment.

It is well established that the constitutional rights of prisoners are more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Although prison inmates do not shed all of their constitutional protections by virtue of their confinement, such rights may be circumscribed to further legitimate penological objectives. Specifically, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974).

In *Turner v. Safely*, 482 U.S. 78 (1987), the Supreme Court established the applicable test for evaluating the constitutionality of regulations that infringe on a prisoner's First Amendment rights. The Court found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89. Even if a policy or regulation impinges on an inmate's constitutional rights, it may nevertheless be valid if it is reasonably related to legitimate penological interests. *Henthorn v. Swinson,* 955 F.2d 351, 353 (5th Cir. 1992) (citing *Turner,* 482 U.S. at 89). Thus, when reviewing a prison policy that restricts the flow of publications to prisoners, the appropriate question is whether that policy is "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 404 (1989). In *Thornburgh,* the Supreme Court noted that administrators are afforded substantial deference regarding policies that

preserve internal order and security by controlling the types of materials that are allowed into a prison.  *Id.* at 416.

In evaluating the constitutionality of a prison regulation that impinges on an inmate's constitutional rights, a court "must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective."  *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (citing *Thornburgh,* 490 U.S. at 414-15).  Under *Turner*, the reasonableness of a practice is evaluated by considering four factors:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Turner,* 482 U.S. at 89-91.  Rationality is the controlling factor, and a court need not weigh each factor equally.  *Mayfield v. Tex. Dep't of Crim. Justice,* 529 F.3d 599, 607 (5th Cir. 2008).  Further, the court's analysis must give due regard to the decisions of prison officials: "prison administrators …, and not courts, [are] to make the difficult judgments concerning institutional operations."  *Turner,* 482 U.S. at 89.

The protections afforded an inmate's mail are generally related to his constitutional right of access to the courts and to free speech and association.  *See, e.g.,*

*Freeze v. Griffith,* 849 F.2d 172, 175 (5th Cir. 1988) (clearly marked legal mail may not be censored). Prison officials may establish reasonable regulations, even with regard to legal mail, such as requiring an attorney to identify himself in writing to prison officials, before they must treat mail as legal mail. *Henthorn,* 955 F.2d at 353 (citing *Taylor v. Sterett,* 532 F.2d 462, 475 n.20 (5th Cir. 1976)). Thus, it is apparent that reasonable regulations regarding prisoner mail are constitutional where such a policy is reasonably related to legitimate penological interests. *See Chriceol v. Phillips,* 169 F.3d 313, 316-17 (5th Cir. 1999) (noting that prison officials may establish reasonable regulations regarding prisoner mail, even where a prisoner claims that rights to free speech and association are implicated). In *Chriceol*, the Fifth Circuit upheld regulations prohibiting access to mail which advocated racial, religious, or national hatred, illegal activities, or violence. *Id.* at 316.

Prior to BP 03.91, the Fifth Circuit found permissible a prison policy excluding publications with explicit sexual content, as long as certain guidelines were followed, in *Guajardo v. Estelle,* 580 F.2d 748, 762 (5th Cir. 1978). The *Guajardo* Court noted that:

> Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through the proper administrative channels.

*Id.* at 762. The *Guajardo* Court further explained that in order to pass constitutional muster, such a policy must give prisoners notification of the refusal, a reasonable opportunity to challenge the initial decision, and an ultimate decision by a disinterested party not privy to the initial censorship decision. *Id.* at 762 n.10.

In this case, Plaintiff alleges that his First Amendment rights were violated when the Defendants denied him certain photographs as sexually explicit under BP 03.91 BP 03.91, § IV (F)(1)(e) provides that a publication may be rejected if:

> It contains sexually explicit images. Publications shall not be prohibited solely because the publication displays naked or partially covered buttocks. Subject to review by the MSCP and on a case-by-case basis, publications constituting educational, medical, scientific, or artistic materials, including, but not limited to, anatomy medical reference books, general practitioner reference books or guides, *National Geographic,* or artistic reference material depicting historical, modern, or post-modern era art, may be permitted;

BP 03.91, § IV (F)(1)(e).

To further the legitimate interest in preventing deviate, criminal sexual behavior in the prison population, prison officials may limit prisoners' access to sexually explicit materials even if they are not obscene. *Thompson v. Patteson,* 985 F.2d 202, 205-06 (5th Cir. 1993). Although Plaintiff complains that prison officials employ their personal interpretation or judgment of BP 03.91 regarding sexually explicit images, prison rules "necessarily confer a certain degree of discretion on prison authorities" to determine what constitutes impermissible sexually explicit material. *Id.* at 207. Moreover, even if the Defendants did not follow BP 03.91 or another prison policy, this, does not, in itself,

amount to a constitutional violation. In *Samford v. Dretke,* 562 F.3d 674, 681 (5th Cir. 2009), the inmate challenged the enforcement of the prison's "negative mail list" that excluded mail to and from the inmate to his minor sons. The restriction was found to be rationally related to the prison's legitimate interest in protecting crime victims and their families from unwanted communications, as the inmate's wife had specifically requested that her sons be placed on the negative mail list and the inmate had in fact been imprisoned after violating the terms of his probation of no contact with his sons. Samford also argued that the TDCJ failed to follow its own procedures arguing that TDCJ policy prohibited including children on a parent-inmate's negative mail list and that rejected mail must be returned to the inmate. 562 F.3d at 681. The Court rejected those arguments noting that the prison's failure to follow its own policies is not sufficient to state a civil rights claim. *Id.* To the extent Plaintiff contends that Defendants failed to follow the mandates of BP 03.91, this allegation too fails to state a cognizable constitutional violation. Although Plaintiff was denied certain photographs that he had ordered, he testified that the photographs in question were reviewed, a finding that they were denied as sexually explicit was made, and Plaintiff was permitted to appeal the decision. This procedure is consistent with *Guajardo.*

    **B.**     **Due process claim.**

Plaintiff maintains that his due process rights were violated because the mailroom staff also sit on the MSCP and simply approve the decisions of the mailroom employee. He claims that he is denied meaningful review because Warden Putnam denies his grievances and the DRC upholds the decisions of the MSCP.

A prisoner has a liberty interest only in freedoms from restraints that impose an atypical and significant hardship in relation to ordinary incidents of prison life, or in those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). Plaintiff does not have a federally protected liberty interest in having his grievances or appeals investigated or resolved in his favor. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005).

Indeed, the same due process claim that is now raised by Plaintiff was raised and rejected in *Strobel v. Livingston,* 538 Fed. Appx. 479, 480 (5th Cir. Aug. 9. 2013) (per curiam) (unpublished). In *Strobel,* the inmate challenged BP 03.91 and the denial of certain photographs as sexually explicit. Like Plaintiff herein, Strobel objected to BP 03.91's authorization to determine what constitutes "sexually explicit" being left to the personal judgment of the mailroom staff and/or the MSCP, with review by the DRC. The Fifth Circuit affirmed the § 1915A dismissal of Strobel's due process claim as meritless, noting that simply asserting that an appeal process is unfair is insufficient to assert a due process violation because it identifies no substantive interest at stake and a prisoner has no constitutionally protected interest in having grievances resolved in a particular manner. *Strobel,* 538 Fed. Appx. at 480 (citing *Geiger,* 404 F.3d at 373-74). The *Strobel* Court further noted that Strobel had not adequately alleged that the defendants violated any constitutionally protected interest that could form the basis of a due process claim. *Id* (citing *McFaul v. Valenzuela,* 684 F.3d 564, 579 (5th Cir. 2012)). Here, Plaintiff was permitted to use both the prison grievance system and to appeal the MSCP decision to the DRC to challenge the denial of the photographs. As such, his complaint fails to allege

any constitutionally cognizable harm.  *McFaul,* 684 F.3d at 579; *Samford,* 562 F.3d at 681.  There is no due process violation.

## V.     Recommendation.

Plaintiff's allegations, taken as true and in the light most favorable to him, fail to state cognizable constitutional violations under 42 U.S.C. § 1983.  Thus, it is respectfully recommended that this action be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. § § 1915(e)(2) and 1915A(b)(1).  It is further respectfully recommended that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g) against this Plaintiff, and that notice of this dismissal be forwarded to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.

Respectfully submitted this 17th day of December, 2014.

                                                              _____
                                                              Jason B. Libby
                                                              United States Magistrate Judge

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).