UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RALPH RODRIGUEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:14-CV-447 |
| § | |
| OLIVER BELL, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Pending before the Court is Plaintiff Ralph Rodriguez's (Rodriguez's) 42 U.S.C. § 1983 civil rights complaint (D.E. 1). On December 17, 2014, United States Magistrate Judge Jason B. Libby issued his Memorandum and Recommendation (M&R) (D.E. 9), recommending that Rodriguez's action be dismissed. Rodriguez timely filed his objections (D.E. 10) on December 31, 2014, and they are set out and discussed below.

Rodriguez filed this action, citing nine numbered challenges to the Texas Department of Criminal Justice's (TDCJ's) interception and confiscation of photographs from his incoming mail. TDCJ deemed the pictures sexually explicit in violation of prison policies. Rodriguez asserts constitutional violations of his free speech and due process rights with respect to the standard of decency applied, the manner in which the decision was made to confiscate his items, the procedure by which decisions are appealed, and the all-or-nothing treatment of the pictures. The Magistrate Judge concluded that Rodriguez's complaint had no merit and recommended dismissal of the case as frivolous.

First, Rodriguez objects to the M&R as inaccurately stating that Rodriguez had fourteen pictures denied. D.E. 10, p. 4. Instead, according to Rodriguez, TDCJ issued fourteen separate denials, each of which involved bundles of pictures, amounting to the confiscation of hundreds of pictures, total. *Id.* The M&R does not limit its recommendation to a holding based on fourteen pictures, but notes that there were "at least" fourteen at issue. D.E. 9, p. 3. The number of pictures involved makes no difference to the legal analysis as to whether TDCJ's actions were unlawful and actionable. Therefore, Rodriguez's first objection is **OVERRULED** as technically incorrect and, as a practical matter, moot.

Rodriguez's second objection challenges TDCJ's failure to follow its own policy, BP 03.91, which he claims requires a Mail System Coordinators Panel (MSCP) review of any individual decision to deny access to correspondence. Rodriguez's argument fails because delegation of the review of correspondence denials to the MSCP is optional. BP 03.91, p. 14. Even if there was a policy violation, "[t]he failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim." *Richardson v. Thornton*, 299 F. App'x 461, 462-63 (5th Cir. 2008). As further discussed below, Rodriguez was, according to admissions in his own pleading, given "a reasonable opportunity to challenge the initial decision" to the Director's Review Committee (DRC) as required by the policy. *Guajardo v. Estelle*, 580 F.2d 748, 762 n.10 (5th Cir. 1978); D.E. 1, p. 9-10; D.E. 10, p. 5. Consequently, Rodriguez's second objection is **OVERRULED**.

Rodriguez's third objection is that TDCJ's correspondence appeal process violates constitutional protections requiring an independent appeal.  D.E. 10, pp. 4-5; D.E. 1, pp. 6-7.  Rodriguez argues that Jennifer Smith was part of the initial denial as well as the DRC appeal decision "whereby completely eliminating any aspect of Due Process."  D.E. 10, pp. 5, 11.  This argument is based on *Guajardo v. Estelle*, in which the Fifth Circuit held that a "[p]risoner must, of course, be allowed to appeal [a denial] decision through proper administrative channels." *Id.* at 762.

More specifically, the Fifth Circuit explained that "[a]n inmate receives sufficient review of the administration's decision not to permit the [correspondence] if he receives (1) appropriate notice, (2) a reasonable opportunity to challenge the initial decision, and (3) an ultimate decision by a ***disinterested party not privy to the initial censorship decision***."  580 F.2d at 762 n.10 (emphasis added).  This requirement is in line with the Supreme Court's holding in *Procunier v. Martinez*, 416 U.S. 396 (1974).  In *Martinez*, the Supreme Court held that:

> [T]he decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards. . . . The District Court required that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official ***other than the person who originally disapproved the correspondence***.  These requirements do not appear to be unduly burdensome, nor do appellants so contend.

*Id.* at 418 (emphasis added).

The Supreme Court has since called *Guajardo* and *Martinez* into question and the test for the constitutionality of a prison decision regarding correspondence has a dramatically changed focal point. As the Fifth Circuit explained, *Guajardo* involved an earlier version of a TDCJ mail regulation and was later limited in its application to a prisoner's outgoing mail. *Prison Legal News v. Livingston*, 683 F.3d 201, 215 (5th Cir. 2012) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989)). Now, the test for determining the constitutionality of a decision to deny a prisoner his incoming mail is that stated in *Turner v. Safley*, 482 U.S. 78 (1987). *Prison Legal News*, 686 F.3d at 215; *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993).

In *Turner*, the Supreme Court was adamant that it cannot be the job of the courts to micromanage prison operations. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). The central question then, for a constitutional challenge, is whether the prison decision to deny a prisoner photographs in his mail is reasonably related to a legitimate penological interest. *Turner,* 482 U.S. at 89. Rodriguez's claim to an independent appeal within TDCJ of the decision denying him his mail does not address the standard this Court is to apply.

Rodriguez's complaint about the alleged lack of independence on appeal is a due process issue. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (citing *Dent v. West Virginia,* 129 U.S. 114, 123 (1889)). With respect to due process rights,

4 / 10

*Turner* cited to *Wolff*. *Turner,* 482 U.S. at 84.  Under *Wolff,* the amount of due process to be accorded is commensurate with the deprivation involved, keeping in mind the need to arrive at a reasonable accommodation between the interests of the inmates and the needs of the institution.  Due process rights exist only to protect legitimate substantive interests. *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) (rejecting "free-standing" due process claims).  The Supreme Court has consistently held that "some kind of hearing" is required at some time before a person is finally deprived of his property interests.  *Wolff,* 418 U.S. at 557-58.

Even when a substantial liberty interest is at issue, due process within the prison system can be limited to notice and an opportunity to be heard, with a requirement of a written decision that memorializes the reasons for the action taken.  *Id*.  The Supreme Court considered that the requirements of a written record would insure that decision-makers would be as fair as possible.  *Id.* at 565.  *Wolff* does not address any administrative appeal process as a constitutional requirement.  Rather, the concern is that decisions not be arbitrary.

TDCJ's policy on inmate correspondence, BP 03.91, includes an appeal process.  However, it also reveals that TDCJ places an emphasis on uniformity in the interpretation and application of the rules.  BP 03.91 (definition of MSCP, which may determine some administrative appeals).  Concerns for uniformity do not mandate independent review and, in some cases, may counsel against complete independence.  Importantly, Rodriguez does not claim that any decision-maker had an impermissible interest in the initial decision to deny him his pictures.

Rodriguez's complaint that one disinterested individual may have been involved in some capacity in both levels of TDCJ decision-making does not state a cognizable claim. The complaint does not go to whether the decision to deny him his mail is reasonably related to a legitimate penological interest and it is not based on a constitutional due process right. Rodriguez's third objection is **OVERRULED**.

Fourth, Rodriguez objects to the Magistrate Judge's interpretation of his First Amendment claim. D.E. 10, p. 5. According to Rodriguez, the problem is that TDCJ personnel, applying their own personal opinions, are acting beyond BP 03.91's scope in construing pubic hair as a sexually explicit image. Whether the policy permits the decisions made is determined by the penological interest to be served. *Turner*, 482 U.S. at 89. Prison administrators clearly have a penological interest in denying sexually explicit materials to inmates. *Thompson v. Patteson,* 985 F.2d 202, 205-06 (5th Cir. 1993).

As the M&R observed, other prisoners have previously asked for court intervention regarding the determination of what is sexually explicit, and that intervention has been denied because of the substantial deference that must be accorded to prison officials on such matters. D.E. 9, pp. 6-11.

> As the *Martinez* Court acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches,

> and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have, as we indicated in *Martinez,* additional reason to accord deference to the appropriate prison authorities.

*Turner,* 482 U.S. at 84-85 (citations omitted). Rodriguez's argument, even if correct, would not rise to the level of demonstrating a clear abuse of discretion and violation of his First Amendment rights with respect to the interpretation or application of BP 03.91 to his photographs. Rodriguez's fourth objection is **OVERRULED**.

Rodriguez's fifth objection reurges his argument that prisoners should be allowed to view the denied material at least once before having to defend against its exclusion. D.E. 10, pp. 6-7 (quoting *Guajardo v. McAdams*, 349 F. Supp. 211, 214 (S.D. Tex. 1972)). Rodriguez's argument is unavailing because *McAdams* was vacated by the Fifth Circuit on a jurisdictional issue in *Sands v. Wainwright*, 491 F.2d 417 (5th Cir. 1973), and there is no current authority requiring that a prisoner be allowed to view an image that has been deemed sexually explicit for purposes of defending against its confiscation. Indeed, mandating a viewing of the denied materials would defeat the policy and encourage inmates to order materials they know will be denied, simply to get that one viewing. Thus, Rodriguez's fifth objection is **OVERRULED**.

Rodriguez's sixth objection reurges his argument that the Magistrate Judge misinterpreted his First Amendment claim. D.E. 10, p. 9. This Court's ruling as to Rodriguez's fourth objection resolves this argument. Rodriguez's sixth objection is **OVERRULED**.

Seventh, Rodriguez contends that the Magistrate Judge erroneously relied on *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009). D.E. 10, p. 10. In *Samford*, the Fifth Circuit addressed the constitutionality of a prison's negative mailing list and held that a prison's failure to follow its own policies is not, by itself, sufficient to state a civil rights claim. 562 F.3d at 681. Rodriguez argues that *Samford* is inapplicable here because a prison's compilation of a negative mailing list is not analogous to the confiscation of a particular photograph with visible pubic hair. D.E. 10, p. 10. Rodriguez's interpretation of *Samford* is too narrow.

*Samford* is not cited for any specific holding as to negative mailing lists but for its general holding that a civil rights claim cannot be based merely on a prison's failure to follow its own policies. That proposition of law is accurate and encompasses Rodriguez's complaints arising out of TDCJ's alleged noncompliance with BP 03.91. Rodriguez's seventh objection is **OVERRULED**.

Rodriguez's eighth objection simply re-casts his complaint, addressed in his third objection, that he was entitled to an independent administrative appeal. He now complains that Supervisor Kisha Collins and Warden Kenneth Putnam generally approve an employee's denial without actually reviewing the item in question. *Id.* at 13. As already addressed, Rodriguez's argument does not address the standard of review that this Court must apply to prison decisions as being reasonably related to legitimate penological interests and he does not have a constitutional due process right to an independent investigation and administrative appeal of prison decisions.

Rodriguez was permitted to file a grievance and did, in fact, appeal the decision to the DRC. He did not suffer a violation of civil rights within the jurisdiction of this Court. Therefore, Rodriguez's eighth objection is **OVERRULED**.

Ninth, Rodriguez objects to the Magistrate Judge's reliance on *Strobel v. Livingston*, 538 F. App'x 479 (5th Cir. 2013) (unpublished) because the case does not deal with his precise issue or combination of issues. D.E. 10, p. 14. This argument is without merit. Rodriguez's interpretation of *Strobel* is too narrow and the legal reasoning of the M&R is appropriate. Additionally, the Magistrate Judge's recommendation is appropriately based on a broad spectrum of case opinions, not strictly on *Strobel*. Consequently, the Court **OVERRULES** Rodriguez's ninth objection.

Rodriguez's tenth objection is that the Magistrate Judge did not address his fifth complaint, claiming that BP 03.91 is unconstitutional as it purportedly adopts an "All-or-Nothing-Rule." D.E. 1, p. 5; D.E. 10, p. 11. Although unclear, Rodriguez seems to argue that TDCJ should be required to redact the offending portions of his correspondence and to give him the rest. This administratively burdensome, content altering, and property-destroying alternative has been rejected by the Supreme Court. *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989).

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as Plaintiff's objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court

**OVERRULES** Plaintiff's objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge (D.E. 9). Accordingly, this action is **DISMISSED WITH PREJUDICE** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1). It is further **ORDERED** that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g) against this Plaintiff, and that notice of this dismissal be forwarded to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Betty Parker.

ORDERED this 16th day of June, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE